645 So.2d 962 (1994)
THE FLORIDA BAR, Complainant,
v.
Susan K. GLANT, Respondent.
No. 81757.
Supreme Court of Florida.
October 13, 1994.
Rehearing Denied December 9, 1994.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Larry L. Carpenter, Bar Counsel, Orlando, for complainant.
Susan K. Glant, pro se.
PER CURIAM.
Attorney Susan K. Glant petitions this Court for review of the referee's recommendation that she receive a public reprimand for her handling of a child custody case. We have jurisdiction based on article V, section 15 of the Florida Constitution.
We agree that Glant violated Florida Rule of Professional Conduct 4-1.2(a), which requires a lawyer to abide by a client's decision regarding the objectives of representation,[1] *963 and find that a public reprimand is the appropriate sanction.
The Bar filed a complaint against Glant over her handling of a child custody case at Central Florida Legal Services (CFLS). Glant was asked to resign from CFLS because of her actions.
The referee made these findings of fact: When Glant began working at CFLS in 1991, she was assigned to represent a mother with four minor children (two boys and two girls) in a custody action against the father. The mother wanted to end the Department of Health and Rehabilitative Services' (HRS) supervision of the children and to retain custody of her two girls. At one point, all four children had been removed from the father's home after allegations of sexual abuse. The record reflects that HRS did not litigate those allegations because of insufficient evidence.
Glant knew the mother did not want custody of all four children. She was to attend a hearing in June 1991 and present the court with a recommendation that HRS terminate its supervision and retain the current custody status (two girls living with the mother and two boys living with the father). After the hearing, based on her belief that the father was sexually abusing the girls, Glant sent a letter to HRS in Tallahassee requesting further investigation.[2] She included a copy of an unfiled motion for custody modification which asked that the mother be given custody of all four children.
Glant testified that she felt obligated to send the letter and unfiled motion to HRS because of rule 4-1.2(d), which prohibits a lawyer from assisting a client in criminal or fraudulent conduct.[3] She also relied on rule 4-1.6(b)[4] as a defense. Glant said she thought HRS's continued supervision of the girls would prevent sexual abuse. She argues that she would have assisted the mother in criminal conduct by knowingly placing the children in a situation where they could be sexually assaulted. Under rule 4-1.16, Glant could have terminated her representation, but she chose not to do so. Glant was asked to resign after she sent HRS the letter and motion.
Glant challenges the referee's recommendations, arguing that: (1) there is no substantial, competent evidence in the record to support the referee's finding that she violated rule 4-1.2; (2) the referee erred as a matter of fact and law in refusing to direct a verdict in her favor; (3) the referee erred as a matter of law in finding Glant guilty of violating rule 4-1.2; (4) the Bar's failure to plead entitlement to costs constitutes a waiver of costs; and (5) there is no substantial, competent evidence in the record to support awarding $3,310.18 in costs to The Florida Bar.
Initially, we address the three issues dealing with rule 4-1.2(a). A referee's findings of fact are presumed correct and will be upheld unless "clearly erroneous or lacking in evidentiary support." The Fla. Bar v. Hayden, 583 So.2d 1016, 1017 (Fla. 1991). The record is undisputed that Glant sent the letter and documents to Bob Williams, who was then the Secretary of HRS, even though she knew her client did not want custody of all four children. Glant testified:

*964 In my opinion, there's really only two things an attorney can do when a client says the children are being sexually molested and you're faced with this type  with this type of, what I consider, solid evidence... . If I withdrew, those children would have been buried  been buried in paperwork, so I did the best thing that I thought in my opinion as an attorney  the next best thing was that I wrote HRS whose [sic] got access to all those documents. I said, you better take a look at this case. You better take a look at what the local HRS attorney is doing to those children. Okay? I sent the Motion to  to Bob Williams. He knew, according to my letter, that I had not filed that Motion, and that's basically why I sent the letter... . The mother would have said no, and Jonathan Hewett would have told me no, and why would they have told me no. The mother would have told me no because she did not care that the children were being sexually molested by her ex-husband.
Glant also testified that she did the right thing in sending the letter:
THE COURT: Do you believe you should have disclosed to your client what you were going to do?
MS. GLANT: No.
THE COURT: Why not?
MS. GLANT: She would have said no.
THE COURT: No  in that you had made a decision  my understanding is you made a decision regardless of what your client said to send the letter.
MS. GLANT: That's right.
THE COURT: My question is  you said  my question is do you believe you should have disclosed what you're about to do, that is, in the letter and the Motion to HRS and to the Governor, you believe you should not have disclosed 
MS. GLANT: Her opinion meant nothing to me at that point in time because this is a mother who knows that sexual abuse is happening to her children and is not doing a single thing to prevent it. I don't care if she said yes or no, Your Honor. I would have sent the letter anyway.
THE COURT: All right. And in sending the letter, you realized it could have subjected you to a violation or alleged violation 
MS. GLANT: Certainly.
THE COURT:  of the Code of Conduct for Attorneys.
MS. GLANT: Certainly.
THE COURT: All right.
MS. GLANT: But Your Honor, you know, I still  today, I still would have done it. I still would have done the same thing as I did then.
Glant was the only person who testified that the father had abused his children. The mother never testified that she knew her daughters were being molested; she told the grievance committee it was possible, but "I can't say that I know because I don't know, you know." It was Glant's opinion that the mother was engaging in criminal conduct, but the referee did not accept this opinion  or Glant's reliance on rule 4-1.2(d). We rely on the referee, as the fact-finder, to resolve any conflicts in the evidence. The Fla. Bar v. Hoffer, 383 So.2d 639, 642 (Fla. 1980). The record supports the referee's finding that Glant violated rule 4-1.2(a). Thus, the referee did not err in refusing to grant Glant's motion for a directed verdict, and we approve the finding that Glant violated rule 4-1.2(a).
We find that a public reprimand is the appropriate sanction for Glant. Florida Standard for Imposing Lawyer Sanctions 7.3 says a public reprimand is appropriate when a lawyer negligently engages in conduct that violates a duty owed as a professional and causes injury or potential injury to the client, the public, or the legal system. In deciding the appropriate sanction, a bar disciplinary action must serve three purposes: the judgment must be fair to society, it must be fair to the attorney, and it must sufficiently deter other attorneys from similar misconduct. See, e.g., The Fla. Bar v. Poplack, 599 So.2d 116, 118 (Fla. 1992); The Fla. Bar v. Pahules, 233 So.2d 130, 132 (Fla. 1970). Glant was admitted to the Bar in 1984 and has no disciplinary history. A public reprimand, followed by six months on probation, serves the purposes of attorney disciplinary action.
*965 Next, we address the issues Glant raises about costs. Rule Regulating the Florida Bar 3-7.6(k)(1)(E) requires a referee's report to include:
a statement of costs incurred by The Florida Bar and recommendations as to the manner in which such costs should be taxed. The costs of the proceedings shall include investigative costs, including travel and out-of-pocket expenses, court reporters' fees, copy costs, witness and traveling expenses, and reasonable traveling and out-of-pocket expenses of the referee and bar counsel, if any. Costs shall also include a $500 charge for administrative costs.
This Court has held that a discretionary approach should be used in awarding costs in Bar disciplinary actions. The Fla. Bar v. Davis, 419 So.2d 325, 328 (Fla. 1982). Thus, the referee has the discretion to determine the Bar's entitlement to costs and the amount assessed. This Court makes the final decision about costs. Based on the record before us, we assess costs against Glant in the amount of $3,310.18.[5]
Accordingly, we publicly reprimand Glant for her actions and order a six-month probationary period. The costs of these proceedings are taxed against Glant and judgment is entered in the amount of $3,310.18, for which sum let execution issue.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
WELLS, J., recused.
NOTES
[1] Florida Rule of Professional Conduct 4-1.2(a) provides in relevant part:

A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to subdivisions (c), (d), and (e), and shall consult with the client as to the means by which they are to be pursued.
Paragraph (c) allows a lawyer to limit the objectives of representation if the client consents. Paragraph (d) prohibits a lawyer from counseling a client to engage, or assisting a client, in conduct the lawyer knows or reasonably should know is criminal or fraudulent. Paragraph (e) requires a lawyer to consult with a client about limitations if the client expects assistance not permitted by law or the Rules of Professional Conduct.
[2] Glant also mailed the letter to the U.S. Attorney General's office in Washington, Governor Lawton Chiles, and the State Attorney's office for the Eighth Judicial Circuit.
[3] "A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent."
[4] "A lawyer shall reveal such information to the extent the lawyer believes necessary: (1) to prevent a client from committing a crime; or (2) to prevent a death or substantial bodily harm to another."
[5] This is the total reflected in the Bar's amended affidavit of costs. The referee's report also reflects this total, but it erroneously lists twice the costs for travel ($56) and transcripts ($982.20). The costs listed in the referee's report total $4,348.38. Without the duplicate costs, the total is $3,310.18.